THOMAS RILEY *et al.,* Plaintiffs-Appellees, v. FAIR & COMPANY, REAL-TORS, *et al.,* Defendants (Fair & Company, Realtors, Defendant-Appellant).

Second District   No. 2—85—0713

Opinion filed December 12, 1986.

David H. Armstrong, of Aurora, for appellant.

William J. Foote and Paul T. Patricoski, both of Dreyer, Foote, Streit, Furgason & Slocum, of Aurora, for appellees.

JUSTICE WOODWARD delivered the opinion of the court:

Following a jury trial, a judgment in the amount of $105,000 actual and $25,000 punitive damages was entered in favor of plaintiffs, Thomas and Sharon Riley and the Old Second National Bank of Aurora, as trustee under land trust No. 2888, and against defendants, Fair & Company, Realtors, and two of its salespersons, Diane Brendel and William Schnabel. The record before us contains separate notices of appeal filed on behalf of both Fair & Company and William Schnabel. However, only the appeal of Fair & Company is before us.

On appeal, Fair & Company raises the following issues: whether plaintiffs' action was barred by collateral estoppel; whether Brendel

and Schnabel were under an affirmative duty to reveal that the property was situated in a flood plain; whether the Consumer Fraud and Deceptive Business Practices Act (the Consumer Fraud Act) (Ill. Rev. Stat. 1981, ch. 121½, par. 261 *et seq.*) applies to cases involving real estate salespersons; whether the jury was properly instructed; whether the verdict was against the manifest weight of the evidence; and whether punitive damages should have been allowed against Fair & Company.

In September of 1978, Thomas and Sharon Riley (Rileys) purchased a 15-acre tract known as Millhurst from Dale and Joan Chally. Located on the property was an historic old mill with a mill race and creek which ran through the property, an annex to the mill, a small white house in poor condition and some cabins, also in poor condition. After the closing, Rileys remodeled and lived in the mill until February of 1979, when the mill was destroyed by fire. Rileys remodeled the little white house on the property and took up residence there. Shortly thereafter, the area was hit by severe floods which necessitated the rescue of Rileys and their family by the civil defense. Needless to say, extensive damage was done to the house. Rileys remodeled again and returned to the house only to be driven out once again by another flood. After the water subsided, Rileys remodeled again, and again another flood occurred causing damage. No more remodeling of the little white house was undertaken after the third flood.

Sometime in 1979, Challys commenced an action against Rileys. The basis of that suit is not contained in the record before this court; however, Rileys filed a counterclaim against Challys, a copy of which is contained in the record before us. The counterclaim alleged that Challys had misrepresented the water problems with the Millhurst property. Following a jury trial, a verdict was entered in favor of Challys and against Rileys on the counterclaim.

On March 10, 1981, Rileys filed a six-count complaint against Fair & Company, Realtors (Fair), the listing office, and two of its salespersons, Diane Brendel and William Schnabel, both of whom had participated in the sale of the property to Rileys. The restatement of the second amended complaint alleged causes of action in misrepresentation and violations of the Consumer Fraud Act. The jury returned a verdict for Rileys, and this appeal followed.

■■ Before we can consider the issues raised on appeal, we must first determine whether the issues have been properly preserved by Fair's post-trial motion. In relevant part, Fair's post-trial motion presented to the trial court the following grounds upon which it was urged that the trial court set aside the verdict of the jury, or, in the

alternative, grant a new trial: "1. The verdict of the Jury is contrary to law. 2. The verdict of the Jury is contrary to the evidence. 3. The verdict of the Jury is contrary to the law and the evidence. 4. The Court erred in refusing to grant Defendants motion for directed verdict at the close of the plaintiffs case. 6. The Court erred in giving Plaintiff's instructions numbered 7 (Proximate Cause), 8A (Issues), 12 (Punitive Damages), 13 (Punitive Damages), 14 (Agency), 16 (Definition of Fraud), and 18 (Duty of Disclosure). 7. The Court erred in refusing to grant Defendant's instructions numbered 1 (Brokers Duty to Purchasers), 4 (Agency), and 5 (Agency). 8. The verdict is excessive. 9. The Court erred in refusing to permit evidence of the uncreased [sic] value of the plaintiffs property by proof of refinancing." No transcript of the hearing on the post-trial motion is contained in the record before us.

Fair's post-trial motion falls short of the requirements of section 2—1202(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1202(b)) and Supreme Court Rule 366(b)(2)(iii) (87 Ill. 2d R. 366(b)(2)(iii)). See *Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344.

Fair's post-trial motion in this case is similar to the one reviewed by this court in *Williamson v. Opsahl* (1981), 92 Ill. App. 3d 1087. In *Williamson,* in discussing the supreme court's decision in *Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, we stated as follows:

"[T]he supreme court *** noted the necessity of specifically apprising the trial court in a post-trial motion of errors relied upon so as to give the trial judge an opportunity to reconsider the correctness of his earlier rulings in the case; to permit the reviewing court to determine from the record whether the trial court had an adequate opportunity to reassess alleged erroneous rulings; and to prevent litigants from subsequently raising on appeal arguments the trial judge had no opportunity to consider. The court noted that '[t]he rule, which is not limited to questions concerning jury instructions, has the salutary effect of promoting both the accuracy of decision making and the elimination of unnecessary appeals.' " (*Williamson v. Opsahl* (1981), 92 Ill. App. 3d 1087, 1090.)

Further, objections in the record do not preserve issues for review where such errors have not been set forth and alleged with specificity a post-trial motion. (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 189.) We therefore conclude that Fair's post-trial motion failed to preserve those issues raised therein for review.

■■ However, the scope of our review is not confined merely to issues preserved for appeal. (*Schutzenhofer v. Granite City Steel Co.* (1982), 93 Ill. 2d 208.) In that case our supreme court stated as follows:

"This court has interpreted our own Rule 341(e)(7) (73 Ill. 2d R. 341(e)(7)), which expresses the waiver doctrine, as 'an admonition to the parties, not a limitation upon the jurisdiction of the reviewing court.' (*Hux v. Raben* (1967), 38 Ill. 2d 223, 224.) Moreover, Rule 366, which has been held analogous to the plain error doctrine in criminal review (38 Ill. 2d 223, 224), provides: '(a) Powers. In all appeals the reviewing court may, in its discretion, and on such terms as it deems just *** (5) give any judgment and make any order *** and further orders and grant any relief *** that the case may require.' (73 Ill. 2d R. 366.)" 93 Ill. 2d 208, 211.

A reviewing court may ignore the waiver rule in order to achieve a just result. *In re Marriage of Bennett* (1985), 131 Ill. App. 3d 1050, 1055.

■■ After reviewing the record before us, we conclude that the evidence supports the jury's verdict and compels resolution of the remaining issues contained in Fair's post-trial motion against Fair and in favor of Rileys, except as to the issue of punitive damages.

Nothing in the record before us indicates that the liability of Fair is anything other than vicarious. In *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, our supreme court reversed an award of punitive damages, stating as follows:

"Moreover, the punitive and admonitory justifications for the imposition of punitive damages are sharply diminished in those cases in which liability is imposed vicariously. [Citations.] With respect to this problem, section 217C of the Restatement (Second) of Agency [(1958)] states:

'Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if:

(a) the principal authorized the doing and the manner of the act, or

(b) the agent was unfit and the principal was reckless in employing him, or

(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or .

(d) the principal or a managerial agent of the principal ratified or approved the act.' " (61 Ill. 2d 31, 36-37.)

In *Oakview New Lenox School District No. 122 v. Ford Motor Co.* (1978), 61 Ill. App. 3d 194, the court followed *Mattyasovszky,* holding that in the absence of any evidence of any deliberate corporate participation in the wrongful act, submitting a wilful and wanton count to the jury was error.

There was no evidence adduced at trial of any conduct on the part of Fair which fit within the exceptions outlined by the restatement. Nor do we find under the circumstances of the case before us that the provisions of the Consumer Fraud Act require the imposition of punitive damages against Fair.

Therefore, we affirm the judgment of the circuit court of Kane County except as to the award of punitive damages against the defendant, Fair & Company, Realtors, which award is reversed.

Affirmed in part and reversed in part.

NASH, P.J., and REINHARD, J., concur.